**WHITNEY BENEFITS, INC., and Peter Kiewit Sons' Co., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 499–83L.**

United States Claims Court.

Feb. 18, 1992.

Joseph K. Meusey, Omaha, Neb., for plaintiff Peter Kiewit Sons' Co.; Joseph E. Jones, Omaha, Neb., and F. Whitten Peters, Washington, D.C., of counsel.

Robert K. Huffman, Washington, D.C., for plaintiff Whitney Benefits, Inc.; Clarence T. Kipps, Jr., Washington, D.C., and Lawrence A. Yonkee, Sheridan, Wyoming, of counsel.

George W. Miller, Washington, D.C., of counsel to both plaintiffs Peter Kiewit Sons' Co. and Whitney Benefits, Inc.

Alfred T. Ghiorzi, Washington, D.C., U.S. Dept. of Justice, for defendant.

## OPINION

SMITH, Chief Judge.

On November 6, 1991, plaintiff Peter Kiewit Sons' Co. (Kiewit) moved the court to apportion the award of damages between the plaintiff Kiewit and the plaintiff Whitney Benefits, Inc. (Whitney) in this case. After reviewing the plaintiffs' briefs [1] and after hearing oral argument on the issue of whether this court has jurisdiction, the court holds that it has jurisdiction over the subject matter of Kiewit's motion.

## FACTS

The case involves an inverse condemnation claim brought by both plaintiffs (Whitney and Kiewit) concerning coal mining rights. Whitney leased its mineral rights to Kiewit in exchange for advance and production royalties. Kiewit paid approximately $582,000 in advance royalties. Enactment of the Surface Mining Control and Reclamation Act of 1977 precluded the mining of the coal. Whitney and Kiewit jointly filed suit in this court seeking compensation for the taking of their rights in the coal estate. This court determined that a taking had occurred, and that the plaintiffs were entitled to recover $60,296,000 plus interest from August 3, 1977. That decision was affirmed by the Federal Circuit, and certiorari was denied by the Supreme Court.[2]

Kiewit then filed its motion for this court to determine how the damages are to be apportioned between the two plaintiffs.

## DISCUSSION

Whitney argues that, with the exception of the claims for attorneys fees and costs, the plaintiffs' claim against the government ended with the 1989 decision of the Claims Court. Whitney contends that the

government has no interest in how the judgment is apportioned; therefore, the motion for apportionment does not assert or involve a claim against the United States as required under the Tucker Act. The court disagrees, and concludes that, based on the precedent and concepts of judicial economy, this motion is properly before the court.

### Case Law

The Court of Claims,[3] held in *Great American Insurance Company v. United States,* 397 F.2d 289, 184 Ct.Cl. 520, 525 (1968), that, where the government is a stakeholder of a sum of money subject to competing claims, the Court of Claims retains jurisdiction to determine the respective rights of the parties to the money. In that case, an insurance company was a surety for a government contractor. The government issued a check payable to the contractor, which the bank cashed. Upon learning of the contractor's impending default, the insurer asked the government to stop payment on the check, which it did. When the bank presented the check for payment, the check was returned. The insurer sued the government; the bank was also required to appear, as it had an interest in the money. The court held that, notwithstanding the fact that the contention was between the insurer and the bank (two private parties), the Court of Claims had jurisdiction to resolve the parties' competing rights in the money held by the government. The court recognized that all parties should be included in the suit who had an interest in the claim, because if a party with an interest was not included and later sued based on its interest, the government might incur double liability. *Id.* at 524.

*Great American* is controlling in this case.[4] Here, the government has been or-

---

1. The court notes that the defendant takes no position on this issue.

2. *Whitney Benefits, Inc. v. United States,* 18 Cl. Ct. 394 (1989), *modified,* 20 Cl.Ct. 324 (1990), *aff'd,* 926 F.2d 1169 (Fed.Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 406, 116 L.Ed.2d 354 (1991).

3. The decisions of the Court of Claims are binding on this court. *South Corp. v. United States,* 690 F.2d 1368 (Fed.Cir.1982).

4. Contrary to Whitney's argument, the fact that *Great American* specifically dealt with Section 14(b) of the Contract Settlement Act of 1944, 41 U.S.C. § 114(b) (1964), does not distinguish that case from the facts now before the court. As Kiewit points out, Section 14(b) is not limited to

dered to pay the judgment to both plaintiffs. Although the contention at this stage of the case is between the two plaintiffs, the government remains a real party in interest. The percentage of the judgment to be awarded to each plaintiff remains at issue, and if the government were to improperly award the judgment, the government would be at risk of further litigation. In *Great American,* each party was claiming 100% of the monies, while here each party is claiming something less than 100%, but still more than the total judgment when combined. Thus, the government's problem is exactly the same. Like the situation in *Great American,* the government is a "stakeholder" of the money. Therefore, the court has jurisdiction over this motion.

Whitney appears to argue that the Claims Court no longer retains jurisdiction over a case once the total liability of the government is set. However, as Kiewit points out, the case law indicates the contrary. In *Hoopa Valley Tribe v. United States,* 596 F.2d 435, 219 Ct.Cl. 492 (1979),[5] the court concluded that the Court of Claims retains jurisdiction to apportion money held by the government notwithstanding the fact that the overall liability of the government has been previously fixed. The court noted that:

> this court's third-party practice ... contemplates that the court will consider conflicting claims to money held by the United States.

*Id.* 596 F.2d 435, 219 Ct.Cl. at 497 n. 1 (citations omitted). Accordingly, this court possesses the authority to apportion the judgment between the competing plaintiffs.

### Judicial Economy

The court also finds that the interests of judicial economy strongly support the clear case law. It would be unfair to place the burden of apportioning the damages on another court when this court is already familiar with the extensive facts of this large and complex case. This court has already held an extensive trial in this case, and reached a decision on the merits. The case has been before the court in one form or another for over six years. It is clearly a far more efficient use of judicial resources for this court rather than a new trial court to make the final determination concerning how the judgment should be apportioned. In addition, this court is in the best position to ensure that any evidence presented on the apportionment issue (if, indeed, additional evidence is necessary), does not contradict the evidence and findings already existing in the case. The court would finally note that this is a constitutional claim for just compensation. Thus, each party has a constitutional interest, steming from the Fifth Amendment, to their appropriate share of the judgment. The court may not now abandon the task it began when it decided that just compensation was due.

## CONCLUSION

For the foregoing reasons, this court holds that it does have jurisdiction over Kiewit's motion for apportionment of damages. The merits of that motion will be addressed in a future order of this court if the current settlement efforts are unsuccessful.

---

suits arising under the Contract Settlement Act. Kiewit's Rpy. Br. at 6, citing *Maryland Casualty Co. v. United States,* 135 Ct.Cl. 428, 141 F.Supp. 900, 901 (1956). Therefore, the case law addressing that section would be applicable to suits other than those arising under the Contract Settlement Act.

**5.** In that case, plaintiff, the Hoopa Valley Indian Tribe, protested a transfer of their case from a United States District Court to the Court of Claims. The liability of the government had previously been established in a separate case, and the issue before the court was how to award the judgment to all parties claiming an interest. The court viewed the United States as a trustee over the money.