**W. David and Janet M. KIMBRELL, Appellants,**

v.

**Dennis J. FISCHER, Acting Administrator of General Services Administration, Appellee.**

**No. 93–1289.**

United States Court of Appeals, Federal Circuit.

Jan. 28, 1994.

David A. Welte, Jenner & Block, Washington, DC, argued for appellant. With him on the brief was Sterling C. Scott.

Lauren S. Moore, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for appellee. Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Jeanne E. Davidson, Asst. Director and Jeffrey R. Davis, Trial Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, were on the brief for the appellee. Also on the brief was Martin Rom, Atty., Gen. Services Admin., of counsel.

Before MICHEL and PLAGER, Circuit Judges, and MESKILL, Senior Circuit Judge.*

MICHEL, Circuit Judge.

Appellants, W. David and Janet M. Kimbrell, appeal the decision of the General Services Administration Board of Contract Appeals (GSBCA), *Kimbrell v. General Servs.*

---

* The Honorable Thomas J. Meskill, Senior Circuit Judge, U.S. Court of Appeals for the Second Circuit, sitting by designation.

*Admin.*, GSBCA No. 11325, 93–2 BCA ¶ 25,-665 (Dec. 2, 1992), denying their claim for an equitable adjustment premised upon selecting 1988 as the base year for application of the tax escalation clause in their lease agreement with the government. At issue on appeal is whether the GSBCA correctly determined that the base year was 1989, which would require appellants to reduce the rent for 1990, rather than 1988, which would entitle appellants to an equitable adjustment. Because we conclude as a matter of law that the GSBCA properly construed and applied the tax clause definition of "base year," and correctly interpreted "full tax assessment" to mean assessment on property only after completion of all improvements required by the lease, we affirm the GSBCA's decision.

## BACKGROUND

On June 15, 1988, the Kimbrells leased property in Lawrence, Kansas, to the government. Initially, the property was undeveloped. Under the lease, however, the Kimbrells had to provide for the improvement of the property with an office building. The lease also contained a clause, called hereinafter "the tax escalation clause," which transferred to the government the risk of increases in real estate taxes assessed during the term of the lease. In relevant part, the tax escalation clause stated:

  (A) The government shall pay additional rent for its share of increases in real estate taxes over taxes paid for the calendar year in which its lease commences (base year).... If no full tax assessment is made during the calendar year in which the government lease commences, the base year will be the first year of a full assessment.

The lease also provided:

  (D) In the event of any decreases in real estate taxes occurring during the term of occupancy under the lease, the rental amount will be reduced accordingly. The amount of any such reduction will be determined in the same manner as

increases in rent provided under this clause.

Appellants' Appendix at 46–47.

The Kimbrells paid $5,829.00 in real estate taxes for 1988. Their 1988 tax assessment did not reflect the newly constructed building because the property was not improved until after January 1, 1988, the valuation date for the 1988 tax appraisal. For 1989, the Kimbrells paid $52,747.38 in real estate taxes. The increase was due not only to the addition of the building, but also to a major increase in real estate tax rates. Pursuant to the tax escalation clause, the Kimbrells sought reimbursement for 1989 tax payments that exceeded the $14,931.00 estimated tax bill for 1989 reflected in the Lessor's Annual Cost Statement, which accompanied the Kimbrells' bid for the lease. The contracting officer denied the Kimbrells' request, on the grounds that:

  (1) The lease commencement date is established as December 1, 1988.

  (2) No full tax assessment was made during the calendar year (1988) in which the lease commenced. The first full tax assessment was made in the 1989 tax year. Thus, 1989 is the base year for tax adjustment purposes.

  (3) Eligibility for tax adjustment, therefore, begins with the 1990 tax year compared to the 1989 tax year.

  (4) Since the Kimbrells in 1990 paid $52,111.32, $636.06 less than the amount paid in 1989, the Kimbrells were not entitled to an adjustment. Rather, pursuant to the tax adjustment clause in the lease agreement, the Kimbrells were required to discount the rent paid by the government in the amount of $636.06.

The Kimbrells challenged the contracting officer's decision, claiming that the contracting officer had improperly failed to recognize 1988 as the base year per the first sentence of the tax escalation clause. The parties submitted their claims to the GSBCA, and the GSBCA upheld the denial of the Kimbrells' claim for an equitable adjustment and sustained the government's claim for an award of $636.00.

The Kimbrells now appeal the decision of the GSBCA. Our jurisdiction is based upon 28 U.S.C. § 1295(a)(10) (1988).

## ANALYSIS

### I.

This case, as the GSBCA opinion properly noted, turns upon the proper interpretation of the tax escalation clause in the lease agreement. Contract interpretation involves questions of law, *B.D. Click Co., Inc. v. United States*, 614 F.2d 748, 752, 222 Ct.Cl. 290 (1980); therefore, the GSBCA's interpretation of the escalation clause is subject to independent review. *United States v. De-Konty Corp.*, 922 F.2d 826, 827 (Fed.Cir. 1991).

### II.

Neither party contests that the basic purpose of the tax escalation clause in the lease agreement was to pass through certain increases in real estate property taxes to the government in the form of rent adjustments. The only question is which year, 1988 or 1989, constitutes the "base year" for purposes of determining eligibility for an adjustment under the escalation clause.

The first sentence of the tax escalation clause clearly states that the base year is the calendar year in which the lease commences. In this case, the lease began in December, 1988. The fourth sentence in the clause, however, provides an exception. In the event that there is no "full tax assessment" during the first calendar year of the lease agreement, that sentence establishes the "first year of a full tax assessment" as the base year. Thus, our decision turns upon the definition of a "full tax assessment" and whether a "full tax assessment" was made during the calendar year 1988.

Appellants assert that a full tax assessment of the property was made in 1988, the year in which the lease commenced. Why they think so is unclear. If, however, their contention is that an absence of abatements or other forms of tax relief in 1988 made the property "fully assessed," they are wrong. As the government notes, the GSBCA prop-erly relied upon *Wetzel*, GSBCA No. 7466, 85–2 BCA ¶ 18,099 at 90,858 (Apr. 30, 1985), for the proposition that there can be no "full assessment" of a property until all improvements contemplated in the lease have been made. Thus, "full" means an assessment on the improved property.

The lease in *Wetzel* contained the same tax escalation clause as the Kimbrells' agreement. Furthermore, as in the case at bar, in *Wetzel*, not all improvements had been made to the leased property at the time of the initial assessment. The GSBCA in *Wetzel* held that "this tax escalation clause is not to be interpreted to hold respondent responsible for tax increases, resulting from improvements." *Id.* at 90,860. The GSBCA reasoned that:

> [i]f the parties intended the base year to be any year before improvements to tenant spaces in the Center had been made, there would have been no need to add the last sentence to the Tax Escalator clause which reads: "[i]f no full tax assessment is made during the calendar year in which the GSA lease commences, the base year shall be the first year of a full assessment."

*Id.*

The government also cites *Universal Development Corp. v. General Services Administration*, GSBCA Nos. 12138 (11520)–REIN, 12139 (11529)–REIN, 93–3 BCA ¶ 26,100 at 129,737 (May 11, 1993), in which the GSBCA followed the same definition of "full tax assessment," and ruled that rent adjustments related to tax increases could not be made until after the tax assessment included the land and the buildings that were being leased by the government.

In the present case, it is undisputed that the 1988 tax assessment was based upon the value of the land, exclusive of the improvements, principally the building, that were contemplated under the lease. The improvements under the lease were not included in the tax assessment until the 1989 tax year. Following the GSBCA's decisions in *Wetzel* and *Universal Development Corp.*, the GSBCA in *Kimbrell v. General Servs. Admin.*, 93–2 BCA ¶ 25,665 at 127,684, determined that no full tax assessment was made in 1988 because the improvements contem-

plated under the Kimbrells' lease were not included in the 1988 tax assessment. We agree. Such a rule is logical and rational under the circumstances. In its lease agreement, the government bargained for the use of a building on the Kimbrells' land. That the Kimbrells had not yet constructed the building at the start of the year the lease was entered into, but did so only later, has no impact on the amount of taxes that are passed through to the government pursuant to the tax escalation clause. The government has an obligation to pay for increases in taxes, but only for increases on that which it bargained for, namely a building on a piece of property, not an undeveloped piece of property.

Thus, according to the tax escalation clause in the Kimbrells' lease agreement, which is standard for such leases, when no full tax assessment is made during the calendar year in which the lease begins, the base year shall be the first year in which there is a full tax assessment. In this case, that year was 1989. Therefore, no tax increase between 1988 and 1989 passes through.

The Kimbrells respond that the government's interpretation reads the general rule established by the tax escalation clause—that the base year is the year in which the lease commences—right out of the clause. Accepting the Kimbrells' interpretation would negate completely the last sentence in the tax escalation clause, which provides an exception to the general rule. Like other courts, our court has clearly held that an interpretation bestowing a reasonable meaning to *all* parts of a contract will be favored over one that leaves portions of the contract meaningless. *Fortec Constructors v. United States,* 760 F.2d 1288, 1292 (Fed.Cir.1985) (citation omitted).

The Kimbrells also argue that the holding in *Wetzel* does not apply to the present case because, in *Wetzel,* the GSBCA determined, *inter alia,* that it was unfair for the government to pay for tax increases attributable to the improvement of *other* tenant spaces. Here, the government has leased the entire building from the Kimbrells, and the tax increases are attributable directly to the improvements used solely by the government. While this may be a valid distinction between the facts of *Wetzel* and the facts here, it is inconsequential as this distinction does not diminish the core rationale behind the GSBCA's holding in *Wetzel, i.e.,* full tax assessment means assessment only after all improvements contemplated in the lease have been made.

Finally, the Kimbrells argue that a lessor reading the tax escalation clause would conclude he is shielded from *all* tax increases. For the reasons stated above, such a reading would not be reasonable. Nor can we accept the Kimbrells' argument that the general purpose of the clause overwhelms the specific terms set forth therein. As unambiguous terms, they must be given effect. Only if the lessor secures different terms can he be protected from real estate tax increases before improvements are completed.

## CONCLUSION

Because 1989 is the base year for tax escalation clause purposes and because the Kimbrells paid less in 1990 than in 1989, they are not entitled to an equitable adjustment but owe the government a discount for the decrease, as the Board held. Accordingly, we affirm the GSBCA's decision.

*AFFIRMED.*