**HRE, INCORPORATED, Appellant,**

v.

**The UNITED STATES, Appellee.**

No. 97–1197.

United States Court of Appeals,
Federal Circuit.

April 29, 1998.

Henry D. Danforth, Watt, Tieder & Hoffar, L.L.P., McLean, VA, argued, for appellant.

Robert Steinbuch, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, argued, for appellee. On the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Paul S. Padda, Attorney.

Before RICH, Circuit Judge,
FRIEDMAN, Senior Circuit Judge, and
LOURIE, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The question is whether the Armed Services Board of Contract Appeals ("Board") correctly interpreted a government contract for renovation of a building as requiring the contractor to insulate certain piping. We agree with the Board's interpretation of the contract and we affirm its decision.

I.

The Department of Health and Human Services ("government") awarded a contract to HRE, Inc., for renovation of a federal

office building. The contract's instructions for insulating piping and air handling and distribution equipment provide in relevant part:

3.3 INSULATION FOR LOW–TEMPERATURE PIPING

   A. General: Unless otherwise specified, insulate low-temperature piping.

   B. Locations Insulated: Install insulation in the following locations and as indicated:

     1. Chilled water piping.

     2. Dual-temperature piping (with alternate heating and cooling).

3.4 INSULATION FOR AIR HANDLING AND AIR DISTRIBUTION EQUIPMENT AND DUCTS

   A. General: Unless otherwise specified insulate air handling and air distribution equipment.

   B. Ventilation System Locations Insulated [if leaving temperatures less than 32 ° C]:

     1. Heating coil enclosures.

   C. Air Heating System Locations Insulated [if leaving temperature more than 32 ° C]:

     1. Heating coil enclosures and external headers.

During performance of the contract, the government directed HRE to insulate condenser water piping, vortex dampers, and the new ductwork that HRE had installed pursuant to other provisions of the contract. HRE objected to these directives, contending that they called for work the contract did not require. HRE complied with the directives, and subsequently filed with the contracting officer claims seeking an equitable adjustment for this work. The contracting officer denied HRE's claims and the Board affirmed. The Board held that the language of the contract required HRE to do the work.

## II.

The parties dispute the meaning of the above-quoted sections 3.3 (Insulation for Low–Temperature Piping) and 3.4 (Insula-

tion for Air Handling and Air Distribution Equipment and Ducts). Because the factual background and legal issues relevant to interpreting each section are for our purposes identical, we simplify our discussion by focusing on the provisions for insulating low-temperature piping.

■ A. Section 3.3A unambiguously states: "Unless otherwise specified, insulate low-temperature piping." HRE concedes that condenser piping is "low-temperature piping." Nothing in section 3.3 "specifie[s]" that the low-temperature condenser piping is not to be insulated, and the clear language of section 3.3A requires such insulation.

That section 3.3A means what it says is confirmed by another provision of the contract that contains specific exceptions to an indistinguishable general insulation requirement. Section 3.2A provides that piping and equipment for steam and hot water systems should be insulated "[u]nless otherwise specified." Section 3.2C, entitled "Locations Not Insulated," lists specific items of equipment that, although within 3.2A's general category of "equipment for steam and hot water heating systems," need not be insulated.

Interpreting the contract in its entirety, see *Zinger Constr. Co. v. United States,* 807 F.2d 979, 981 (Fed.Cir.1986), we conclude that if the parties intended to exempt condenser piping from the requirement in section 3.3A that low-temperature piping was to be insulated, the contract would have explicitly said so—as it did in section 3.2C for certain steam and hot water systems. In the absence of such an exemption, we agree with the Board that section 3.3A should be applied as written to cover all "low-temperature piping" "[u]nless otherwise specified," and that the contract did not "otherwise specif[y]" that condenser piping need not be insulated.

■ B. HRE contends, however, that the history of the drafting of the contract shows that such piping was not to be insulated. The technical provisions of the contract consisted of portions of a government document that supplemented a document known as "Masterspec," an American Institute of Architects set of work standards widely used in the construction industry. In preparing the

contract, the government's draftsman made various changes in the Masterspec Supplement.

Section 3.4 of the Masterspec Supplement, which governs "insulation for low-temperature piping" and parallels section 3.3 of the contract, lists six types of equipment under the heading "Locations Insulated." This is the counterpart of section 3.3B of the contract. Item 2 of that listing is condenser piping. That item was not included in section 3.3B of the contract, which contains only two other items.

HRE contends that because condenser piping was not included in section 3.3B, the contract's general insulation requirement was not intended to cover such piping. It is section 3.3A, however, and not section 3.3B, that defines the work to be done. Section 3.3B identifies the locations.

The only exception to the general insulation requirement in section 3.3A is if non-insulation is "otherwise specified." The use of the word "specified," instead of a more general word like "indicated," strongly suggests that any such exception must be explicitly stated—as it is in section 3.2C. The negative implication upon which HRE relies—that the absence of any reference to condenser piping in the "locations insulated" provision in section 3.3B shows that section 3.3A does not cover such piping—does not satisfy the "otherwise specified" requirement of the latter section.

■ HRE's construction of the contract violates the well-settled rule that when the provisions of a contract are clear, "the court may not resort to extrinsic evidence to interpret them." *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed.Cir.1996). "Outside evidence may not be brought in to create an ambiguity where the language is clear." *City of Tacoma v. United States*, 31 F.3d 1130, 1134 (Fed.Cir.1994). Here, as we have shown, the general insulation requirement in section 3.3A is clear and unambiguous. Its coverage cannot be restricted by resort to evidence—primarily the testimony of the government official who drafted the contract—regarding the circumstances under which the Masterspec Supplement provision listing condenser piping as one of the six

locations to be insulated was not included in section 3.3B of the contract.

Invoking the principle that a contract should be interpreted to give meaning to all of its provisions, *see Kimbrell v. Fischer*, 15 F.3d 175, 178 (Fed.Cir.1994), HRE argues that if the contract is read to require insulation of items not specifically listed in section 3.3B, then that provision has no meaning. By the same reasoning, however, HRE's contention would deny meaning to the general insulation requirement of section 3.3A. Although the precise reason for the listing of two types of piping in section 3.3B may be unclear, they may have been included to avoid any question that those two categories were low-temperature piping to be insulated.

■ C. HRE's arguments relating to section 3.4's provisions for insulating air handling and distribution equipment mirror its arguments relating to section 3.3's provisions for insulating low-temperature piping and thus require only brief discussion. HRE concedes that ductwork and vortex dampers are "air handling and air distribution equipment," and cannot dispute that section 3.4A requires "[u]nless otherwise specified insulate air handling and air distribution equipment." HRE cannot point to any provision in the contract that "otherwise specifies" that ductwork and vortex dampers are not to be insulated. For the reasons given in our discussion of section 3.3, the general requirement in section 3.4A that air handling and air distribution equipment be insulated "[u]nless otherwise specified" requires insulation of ductwork and vortex dampers.

D. This contract is hardly a model of clarity, and the government would be well advised to review its provisions to make them more comprehensible and avoid ambiguity for the benefit of contractors, government officials, and the courts. Such clarification would also avoid future litigation that seems likely to arise over the various provisions of the contract based on the Masterspec Supplement. In particular:

1. If the government continues to define coverage by a general provision subject to specific exceptions, it might decide to include in every contract a specific exception provi-

sion with an instruction that if there are no exceptions that should be stated in the exception provision. Section 3.3A would be clearer if it stated something like: "General. Unless specifically excepted under section ____ below, insulate low-temperature piping."

2. The precise function of paragraph 3.3B is unclear. Although it purports to describe "Locations Insulated," it specifies not the locations but particular kinds of piping. Such a provision is bound to cause confusion and disputes.

There may be other provisions of the Masterspec Supplement that should be revised and clarified. The two items discussed above are singled out only because they are directly involved in this case.

## CONCLUSION

The Board's decision affirming the denial of HRE's claim for equitable adjustment is

*AFFIRMED.*