**VERMONT YANKEE NUCLEAR POW-ER CORPORATION, and Entergy Nuclear Vermont Yankee, LLC, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

Nos. 02–898C, 03–2663C.

United States Court of Federal Claims.

Oct. 22, 2008.

**340**

Richard J. Conway, with whom were Scott Arnold, Nicolas W. Mattia, Jr., and Shannon Forchheimer, Dickstein Shapiro LLP, Washington, D.C., for Plaintiff Vermont Yankee Nuclear Power Corporation.

Brad Fagg, Morgan, Lewis & Bockius LLP, Washington, D.C., with whom was L. Jager Smith, Jr., Wise Carter Child & Caraway, P.A., Jackson, Mississippi, Of Counsel for Plaintiff Entergy Nuclear Vermont Yankee, LLC.

Marian E. Sullivan, with whom were Gregory G. Katsas, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Harold D. Lester, Jr., Assistant Director, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, Washington, D.C., with whom were Jane K. Taylor, U.S. Department of Energy, Washington, D.C., and Patrick B. Bryan, Jeremiah M. Luongo, Anthony W. Moses, and Scott C. Slater, Commercial Litigation Branch, of Counsel, for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

These cases arise from Defendant's failure to begin accepting spent nuclear fuel and high-level radioactive waste (collectively, "SNF") generated at the Vermont Yankee Nuclear Power Station ("Power Station") in Vernon, Vermont. Plaintiff Vermont Yankee Nuclear Power Corporation ("Vermont Yankee") owned and operated the Power Station until 2002 when it sold the facility to Plaintiff Entergy Nuclear Vermont Yankee, LLC, *et al.* ("ENVY"). Vermont Yankee and ENVY brought separate actions in this Court in 2002 and 2003 respectively seeking recovery of damages relating to the failure of the Department of Energy ("DOE") to begin disposing of SNF at the Power Station not later than January 31, 1998, as agreed under DOE's Standard Contract.

At issue in *Vermont Yankee Nuclear Power Corporation v. United States*, No. 02–898C, is a motion for partial summary judgment, or in the alternative, motion in limine, filed by Plaintiff ENVY on June 11, 2008. ENVY seeks partial summary judgment regarding ownership of, and right to, pursue SNF claims relating to the Power Station. In the alternative, ENVY seeks relief by a motion in limine to preclude Vermont Yankee from introducing evidence regarding SNF claims that were assigned to ENVY in the Power Station sales agreement. For the reasons stated below, ENVY's motion for partial summary judgment regarding ownership of, and right to, pursue claims is GRANTED. Lacking any actionable claims that were not transferred to ENVY in the sale of the Power Station, Vermont Yankee's Complaint and First Amended Complaint are dismissed with prejudice.

### Factual Background

On June 10, 1983, pursuant to the Nuclear Waste Policy Act of 1982, as amended, 42 U.S.C. §§ 10101 *et seq.* ("NWPA"), Vermont Yankee and DOE signed a Standard Contract regarding DOE's agreement to dispose of SNF generated at the Power Station. The Standard Contract obligated DOE to begin accepting SNF for disposal from nuclear waste producers not later than January

31, 1998 in exchange for the payment of substantial fees. DOE, however, did not commence performance by January 31, 1998 and, to date, still has not yet begun.

Contract holders such as Vermont Yankee, in accordance with the Standard Contract, are required to pay two sets of fees. One such fee, which is relevant to the motion presently before the Court, is a one-time fee relating to the SNF that the power station operators already had in possession at the time they signed Standard Contracts in 1983. Vermont Yankee, when it entered into its Standard Contract, elected to defer payment of the one-time fee until a date prior to first delivery of SNF to the Government, with interest accruing from April 7, 1983 to the date of payment. *Vermont Yankee Nuclear Power Corp. v. United States*, 73 Fed.Cl. 236, 238 (2006). To date, Vermont Yankee has not paid the one-time fee. *Id.*

On August 15, 2001, Vermont Yankee entered into a Purchase and Sale Agreement ("PSA") with ENVY for the Power Station and completed the sale almost a year later, on July 31, 2002. In the PSA, at Section 2.1, Vermont Yankee agreed to "sell, assign, convey, transfer and deliver" to ENVY certain "Acquired Assets." Among the Acquired Assets was "all Spent Nuclear Fuel and other Nuclear Materials located at the [Power Station] to which [Vermont Yankee] has title." ENVY Mot. for Partial Summ. J. Ex. A at 18 (PSA § 2.1(b)). Also included as an Acquired Asset were the claims relating to DOE's default under the Standard Contract:

> (n) Subject to Section 6.11(b), any claims of [Vermont Yankee] related to the Department of Energy's defaults under the DOE Standard Contract accrued as of the Closing, whether relating to periods prior to or following the Closing, excluding such claims as may relate to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983[.]

*Id.* at 19 (PSA § 2.1(n)). As noted, the transfer of the claims was subject to the terms of PSA Section 6.11(b). *Id.* Section 6.11, entitled "Spent Nuclear Fuel Fees," provides in subparagraph (b) that Vermont Yankee's obligation to pay the one-time fee was subject to any rights of set-off relating to DOE's default of the Standard Contract to which Vermont Yankee was entitled:

> (b) [Vermont Yankee] agrees, upon receipt of at least 30 days advance written notice from [ENVY] of the date on which the onetime fee for fuel burned prior to April 7, 1983 under the DOE Standard Contract will become due and payable in accordance with the terms of the DOE Standard Contract, to cause such fee to be duly paid when due, subject to any rights of set-off to which [Vermont Yankee] may be entitled by reason of the Department of Energy's defaults under said DOE Standard Contract.

*Id.* at 63 (PSA § 6.11(b)).

The PSA also contained a list of "Excluded Assets," which included the "claims of [Vermont Yankee] related or pertaining to the Department of Energy's defaults under the DOE Standard Contract to the extent applicable to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983." *Id.* at 20 (PSA § 2.2(i)). Further, Vermont Yankee and ENVY agreed that Vermont Yankee would retain "[a]ny Liability ... under the DOE Standard Contract with respect to the one-time fee for fuel burned prior to April 7, 1983." *Id.* at 24 (PSA § 2.4(m)).

Both the Power Station's former owner, Vermont Yankee, and the current owner, ENVY, have brought suit in this Court seeking damages from DOE's pre-sale default. One day prior to the completion of the sale of the Power Station to ENVY, Vermont Yankee filed suit against the United States "to recover significant damages caused by [DOE's] material partial breach of its unconditional obligation to begin disposing of [SNF]...." Vermont Yankee Compl. ¶ 1. In its First Amended Complaint, Vermont Yankee sought "claims for damages in accordance with the claims [Vermont Yankee] reserved the rights to pursue in its purchase and sale agreement with [ENVY], including pursuit of damages for the diminished selling value of the Power Station." Vermont Yankee First Am. Compl. ¶ 3. Vermont Yankee asserted that "[a]s a direct consequence of DOE's disregard of its contractual obligations," it has suffered damages including

"substantial additional costs to provide for extended on-site storage of the Power Station's SNF prior to the sale of the Power Station," "regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of [Vermont Yankee's] nuclear plants," as well as "diminished ... value of the Power Station, such that Vermont Yankee would have received a higher price for selling the Power Station." *Id.* at ¶¶ 22, 26.

On November 13, 2003, ENVY also filed suit against the United States to recover "significant damages caused by [DOE's] material partial breach of its unconditional obligation to begin disposing of [SNF] generated by the commercial nuclear power plant owned by ENVY." ENVY Compl. ¶ 1. ENVY seeks relief based upon theories of partial breach of contract, breach of the implied covenant of good faith and fair dealing, and taking without just compensation. *Id.* at ¶¶ 25, 30, 34. ENVY seeks both pre-sale and post-sale damages. ENVY Mot. for Partial Summ. J. at 5. For example, ENVY seeks $7 million in costs incurred during a pre-closing racking project in 2000–2001, as well as a post-closing dry storage facility construction project. *Id.*

This Court, on August 16, 2006, partially consolidated these cases for the purposes of pending summary judgment motions, discovery, and future trial procedures in an effort to avoid the duplicative presentation of testimony and exhibits. Thereafter, Defendant moved for summary judgment based upon an alleged invalid assignment of claims, or for Vermont Yankee's failure to pay the one-time fee, but the Court denied this motion. *Vermont Yankee,* 73 Fed.Cl. at 245. The Court, however, did grant Plaintiffs' cross-motions for summary judgment on liability because the United States Court of Appeals for the Federal Circuit previously had determined that the Government breached every utility's Standard Contract when DOE failed to accept SNF beginning January 31, 1998. *Id.* (citing *Maine Yankee Atomic Power Co. v. United States,* 225 F.3d 1336, 1342 (Fed.Cir. 2000); *Northern States Power Co. v. United States,* 224 F.3d 1361 (Fed.Cir.2000)).

On June 11, 2008, ENVY filed the present motion for partial summary judgment or, in the alternative, motion in limine. ENVY requests the Court to find that Vermont Yankee, in the PSA, retained only those claims for damages against DOE that relate to the one-time fee. ENVY Mot. for Partial Summ. J. at 1. ENVY argues that Vermont Yankee "broadly assigned in the [PSA] all claims against DOE" to ENVY with the exception of claims relating to the one-time fee. *Id.* at 2. ENVY further alleges that the claims sought by Vermont Yankee "for actual incurred pre-closing expenditures and for purported 'diminution in value' of the plant" are unrelated to the one-time fee and thus Vermont Yankee cannot pursue them. *Id.* at 3. ENVY therefore states that summary judgment, or in the alternative, an order in limine precluding evidence in support of Vermont Yankee's claims is appropriate. *Id.*

### Discussion

#### A. Jurisdiction

■ While the current motion seeks adjudication of a dispute between two private parties, this Court retains jurisdiction because the rights at issue are not entirely private. In this motion, ENVY asks the Court to adjudicate the ownership of a public right: the right to bring certain claims against the Government in connection with DOE's Standard Contract. *See Am. Renovation & Constr. Co. v. United States,* 65 Fed. Cl. 254, 261–62 (2005). As such, this Court may exercise its "ancillary and pendent jurisdiction that allows it to adjudicate issues that are incidental to the court's general jurisdictional authority to render money judgments." *Id.* at 260 (citing *Holley v. United States,* 124 F.3d 1462, 1466 (Fed.Cir.1997); *Pauley Petroleum v. United States,* 219 Ct.Cl. 24, 591 F.2d 1308 (1979)). Since the Government may ultimately bear the cost of the damages alleged in these claims, this Court possesses jurisdiction to determine the respective rights of these private parties. *See Whitney Benefits, Inc. v. United States,* 25 Cl.Ct. 232, 233 (1992); *Great Am. Ins. Co. v. United States,* 184 Ct.Cl. 520, 525, 397 F.2d 289 (1968).

## B. *Standard for Decision*

Partial summary judgment is appropriate when, as to a particular issue, there are no genuine issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. *INSLAW, Inc. v. United States,* 35 Fed.Cl. 295, 303 (1996); RCFC 56(c). "Material" facts are those that have the potential to affect significantly the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" issue exists when a reasonable trier of fact could find in favor of the non-moving party based on the evidence presented. *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing the evidence, the Court resolves all factual doubts and draws all justifiable inferences in favor of the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

Questions of contract interpretation are issues of law that may be resolved by summary judgment. *See Muniz v. United States,* 972 F.2d 1304, 1309 (Fed.Cir.1992). " 'To the extent that the contract terms are ambiguous, requiring weighing of external evidence, the matter is not amenable to summary resolution.' " *CW Gov't Travel, Inc. v. United States,* 63 Fed.Cl. 369, 390–91 (2004) (quoting *Beta Sys., Inc. v. United States,* 838 F.2d 1179, 1183 (Fed.Cir.1988)). However, summary judgment may be appropriate when the contract terms are unambiguous. *See, e.g., General Elec. Co. v. United States,* 60 Fed.Cl. 782 (2004).

## C. *The Court Has Not Held Previously That The PSA Is Ambiguous.*

Vermont Yankee argues that the PSA is ambiguous, requiring extrinsic evidence and further factual development to determine which claims were retained and which were assigned to ENVY. *See* Vermont Yankee Mem. in Op. at 10. Vermont Yankee relies upon this Court's earlier opinion in these cases, in which the Court stated that it was "not able to determine as a matter of law whether all of [Vermont Yankee's] claims have been assigned to [ENVY]" and that "[t]he precise nature and components of the [Vermont Yankee] and [ENVY] claims must await further development and trial on the merits." *Id.* (emphasis omitted) (citing *Vermont Yankee,* 73 Fed.Cl. at 242). Vermont Yankee thus concludes that the claims retention language in the PSA "is not a model of clarity" and "can be susceptible to different interpretations." *Id.* at 10–11.

Vermont Yankee misconstrues the Court's previous opinion. The language cited by Vermont Yankee is not a holding that the PSA is ambiguous, but rather a statement that the Court did not have enough information before it in October 2006 to decide the question as a matter of law. Prior to the Court's 2006 opinion, the parties had not briefed the issue of which claims Vermont Yankee had assigned to ENVY. In fact, at that time, the Court had yet to benefit from ENVY's arguments because ENVY was not a party to the motion that contained the Government's position of an invalid assignment.

Since that time, however, all three parties have briefed this issue and the Court heard oral argument on September 17, 2008. The Court now has sufficient information to conclude that the PSA's assignment of claims language is unambiguous.

## D. *The PSA is Unambiguous Regarding the Assignment of Claims.*

"The plain language of a contract is necessarily the starting point, and very often is the finishing point, of a court's duty to interpret a contract." *General Elec.,* 60 Fed. Cl. at 791; *see also, Hercules, Inc. v. United States,* 292 F.3d 1378, 1380 (Fed.Cir.2002) ("Contract interpretation begins with the plain language of the written agreement."); *C. Sanchez & Son, Inc. v. United States,* 6 F.3d 1539, 1543 (Fed.Cir.1993) ("A contract is read in accordance with its express terms

and the plain meaning thereof."). "When the contract language is unambiguous, the court's inquiry is at an end, and the plain language of the contract is controlling." *Johnson Controls World Servs., Inc. v. United States,* 48 Fed.Cl. 479, 492 (2001). Further, "[a]n ambiguity does not exist simply on the basis that the parties assert different interpretations of the contract." *Westinghouse Elec. Corp. v. United States,* 41 Fed. Cl. 229, 234 (1998). Rather, a contract provision is ambiguous only when it " 'is susceptible to more than one reasonable interpretation,' and those interpretations 'fall within a zone of reasonableness.' " *S & M Mgmt. Inc. v. United States,* 82 Fed.Cl. 240, 250 (2008) (quoting *Metric Constructors, Inc. v. NASA,* 169 F.3d 747, 751 (Fed.Cir.1999)).

This Court previously has enforced provisions in contracts for the sale of power stations that assign to the buyer the rights to pursue damages for breach against DOE. *See Delmarva Power & Light Co. v. United States,* 79 Fed.Cl. 205 (2007), *aff'd,* 542 F.3d 889 (2008). In *Delmarva,* the seller of the power station assigned to the buyer: "All claims of seller relating to or pertaining to the Department of Energy's defaults under the Department of Energy Standard Contract ... accrued prior to, on or after the Closing date whether relating to periods prior to or after the Closing date, and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased assets...." *Id.* at 216. From this language, the Court concluded that "[n]o dispute can be marshaled that the plain language of this provision expressly assigns the right to pursue breach of contract claims against DOE for its failure to take SNF." *Id.* In *Boston Edison Co. v. United States,* 80 Fed.Cl. 468, 477 (2008), the assignment language expressly reserved to the seller the rights to "any claims of Seller related or pertaining to the [DOE's] defaults under the DOE Standard Contract accrued as of the Closing Date." The court held that because "[t]he language of the assignment clause, however, expressly preserve[d] Boston Edison's claims arising *as of* the date of the closing," the case was distinguishable from *Delmarva. Id.* at 496.

ENVY and Vermont Yankee proffer competing interpretations of the PSA. ENVY argues that, based upon the PSA's plain language, Vermont Yankee retains only those claims relating to the one-time fee. Mot. for Partial Summ. J. Hr'g Tr. 8–9 (Sept. 17, 2008). ENVY also contends that the assignment language in the PSA is similar to that in *Delmarva,* except for the exclusion of claims that relate to the one-time fee. *Id.* at 17. Conversely, Vermont Yankee argues that the PSA grants Vermont Yankee the ability to raise claims that relate to fuel used to generate electricity prior to April 7, 1983. *See id.* at 29, 35. Vermont Yankee asserts that the present case is more similar to *Boston Edison,* because like the seller in that case, Vermont Yankee retained certain claims. *Id.* at 41–42. Vermont Yankee explains that, because the Plaintiffs have competing interpretations of the PSA, the PSA is ambiguous and summary judgment is inappropriate. *See id.* at 35.

These diverging interpretations, however, do not necessarily indicate that the PSA is ambiguous as to the claims retained by Vermont Yankee. *See Westinghouse Elec.,* 41 Fed.Cl. at 234; *S & M Mgmt.,* 82 Fed.Cl. at 250. As discussed below, only ENVY has proffered a reasonable interpretation of the PSA's claim retention language. The Court therefore finds that the PSA is unambiguous.

1. *ENVY's Interpretation of the PSA is Reasonable.*

ENVY argues that Vermont Yankee retains only those claims that relate to the onetime fee, assigning all other claims to ENVY. Hr'g Tr. 8. The plain meaning of the PSA supports ENVY's interpretation.

Among the multiple Acquired Assets ENVY received under the PSA were Vermont Yankee's claims relating to DOE's defaults "excluding such claims as may relate to the onetime fee with respect to fuel used to generate electricity prior to April 7, 1983." ENVY Mot. for Partial Summ. J. Ex. A at 18 (PSA § 2.1(n)). This Section specifically states that claims relating to the one-time fee are excluded from the assets acquired by ENVY, thus indicating that these claims are retained by Vermont Yankee. Additionally,

Section 2.1(n) is subject to the terms of Section 6.11(b) of the PSA, which notes that Vermont Yankee retains "any rights of set-off to which [it] may be entitled by reason of the Department of Energy's defaults under said DOE Standard Contract." *Id.* at 63 (PSA § 6.11(b)). The plain meaning of this Section is consistent with Section 2.1(n), as it allows Vermont Yankee to assert setoffs to the one-time fee to which it may be entitled due to DOE's defaults. Thus, if a claim is related to the one-time fee, Vermont Yankee has retained it, and may seek a set-off of the one-time fee based upon that claim. Similarly, when discussing which assets were excluded from the transfer to ENVY, the PSA included "the claims of [Vermont Yankee] related or pertaining to the Department of Energy's defaults under the DOE Standard Contract to the extent applicable to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983." *Id.* at 20 (PSA § 2.2(i)). The plain meaning of this section is consistent with that of PSA § 2.1(n), that Vermont Yankee retained only those claims relating to the one-time fee.

Based upon the plain meaning of the PSA, ENVY's interpretation that Vermont Yankee retained only those claims related to the one-time fee is reasonable. As ENVY's interpretation of the PSA is reasonable, the Court will only find an ambiguity if Vermont Yankee's interpretation also is reasonable. *See General Electric,* 60 Fed.Cl. at 792–93.

### 2. *Vermont Yankee's Interpretation of the PSA is Unreasonable.*

In its briefs and at oral argument, Vermont Yankee contends that the PSA can be reasonably interpreted to grant Vermont Yankee retention of claims relating to fuel used to generate electricity prior to April 7, 1983. Vermont Yankee argues that, since it has proffered a reasonable interpretation of the PSA that differs from ENVY's interpretation, summary judgment is inappropriate. *See* Vermont Yankee Mem. in Op. at 2; Hr'g Tr. 35. However, Vermont Yankee's interpretation of the PSA is unreasonable.

Vermont Yankee contends that it attempted to retain claims against the DOE for breach of contract with respect to the fuel used to generate electricity prior to April 7, 1983. Hr'g Tr. 29. Vermont Yankee asserts that the language in the PSA preserving such claims is "with respect to fuel used to generate electricity prior to April 7, 1983." *See* Hr'g Tr. at 30–31. Had the parties intended to preserve only those claims that relate to the one-time fee, Vermont Yankee argues that the claims exclusion language in PSA § 2.1(n) "could ... end at the words 'excluding such claims as may relate to the one-time fee.'" *Id.* at 31. Vermont Yankee asserts that the addition of the words "with respect to fuel used to generate electricity prior to April 7, 1983" indicates that the PSA excluded from the Acquired Assets claims relating to the fuel used to generate electricity prior to April 7, 1983 rather than just to claims relating to the one-time fee. *Id.* at 30–31. Vermont Yankee further contends that Section 2.1(n) conditions the Acquired Assets upon Section 6.11(b) of the PSA, which states that the one-time fee is subject to any rights of set-off to which Vermont Yankee may be entitled by reason of DOE's defaults. *Id.* at 34. As this Section does not reference the one-time fee or pre–1983 nuclear fuel, Vermont Yankee argues that it confers "broad" rights upon Vermont Yankee regarding its ability to seek claims relating to the Power Station. *Id.* Vermont Yankee concludes that the broad language of Section 6.11(b), when read with Section 2.1(n), retains for Vermont Yankee any claim relating to the pre–1983 fuel. *Id.* at 34–35.

Vermont Yankee's interpretation of the PSA is unreasonable. First, Vermont Yankee's interpretation renders the "one-time fee" language of the PSA meaningless. It is fundamental that a contract should be interpreted so as not to render portions of it meaningless. *See, e.g., Medlin Constr. Group v. Harvey,* 449 F.3d 1195, 1201 (Fed.Cir. 2006) ("Because the government's interpretation would render that portion of the contract meaningless and superfluous, it is not reasonable."); *Dalton v. Cessna Aircraft Co.,* 98 F.3d 1298, 1305 (Fed.Cir.1996) ("[The court] read[s] the language of a particular contractual provision in the context of the entire agreement ... and construe[s] the contract so as not to render portions of it meaning-

less."). By arguing that it retained claims against DOE for breach of contract with respect to the fuel used to generate electricity prior to April 7, 1983, Vermont Yankee gives the phrase "as may relate to the one-time fee" no meaning. Vermont Yankee ignores this language and focuses instead on the phrase "with respect to fuel used to generate electricity prior to April 7, 1983." Vermont Yankee's failure to give meaning to this language renders its interpretation unreasonable. *See Medlin Constr. Group,* 449 F.3d at 1201; *Dalton,* 98 F.3d at 1305. In fact, Vermont Yankee unreasonably focuses on a descriptive phrase in Section 2.1(n). The plain words of Section 2.1(n) show that the phrase "with respect to fuel used to generate electricity prior to April 7, 1983" modifies the term "one-time fee," providing a description of the type of one-time fee to which the claim must relate. Focusing on the descriptive phrase instead of the key term, as Vermont Yankee does, is unreasonable.

Second, Vermont Yankee's interpretation of the PSA creates a conflict between two of its provisions and is unreasonable. It is axiomatic that "[a] contract must be considered as a whole and interpreted in such a manner as to harmonize and give reasonable meaning to all of its parts." *TDM Am., LLC v. United States,* 83 Fed.Cl. 780, 784 (2008) (citing *McAbee Constr., Inc. v. United States,* 97 F.3d 1431, 1434–35 (Fed.Cir.1996)). Here, Vermont Yankee's argument that Section 6.11(b) permits it to seek claims against the Government that are "broad" and unrelated to the one-time fee so long as they relate to the DOE's defaults under the Standard Contract is inconsistent with the plain language of Section 2.1(n), which broadly assigned the default claims to ENVY. In essence, Vermont Yankee's interpretation of Section 6.11(b) would counteract its broad assignment of claims in Section 2.1(n). Such an interpretation is inherently unreasonable.

Third and finally, Vermont Yankee's reading of Section 6.11(b) is inconsistent with the plain meaning of that section. Section 6.11(b) is entitled "Spent Nuclear Fuel Fees." As such, the plain meaning of that Section indicates that it addresses *fees* rather than *claims* as Vermont Yankee suggests. Vermont Yankee's argument that the Section is intended to confer upon Vermont Yankee the ability to seek claims is thus inconsistent with the text of the Section and therefore is unreasonable.

Vermont Yankee cites to a wealth of extrinsic evidence in an attempt to support its reading of the PSA. Vermont Yankee Mem. in Op. at 11–17. However, it is a "well-settled rule that when the provisions of a contract are clear, 'the court may not resort to extrinsic evidence to interpret them.'" *HRE, Inc. v. United States,* 142 F.3d 1274, 1276 (Fed.Cir.1998) (quoting *McAbee Constr.,* 97 F.3d at 1435); *see also City of Tacoma, Dep't of Public Utilities v. United States,* 31 F.3d 1130, 1134 (Fed.Cir.1994) ("Outside evidence may not be brought in to create an ambiguity where the language is clear."). As the plain meaning of the PSA is clear, this extrinsic evidence may not be used to create an ambiguity in the PSA.

Thus, while in hindsight a careful drafter might have drafted the agreement differently, only ENVY has proffered a reasonable interpretation—that Vermont Yankee retained only those claims relating to the one-time fee. Vermont Yankee's interpretation of the relevant language is unreasonable and cannot be used to create an ambiguity in the PSA. The PSA is unambiguous with regard to the assignment of claims and requires neither extrinsic evidence nor further factual development to interpret its meaning.

### E. *Vermont Yankee Did Not Retain Its Pre–Closing Costs Claim.*

■ As Vermont Yankee retained only those claims that relate to the payment of the one-time fee, its claim for pre-closing damages must relate to that fee in order to survive summary judgment. In its First Amended Complaint, Vermont Yankee seeks damages for storage of SNF prior to the sale of the Power Station and regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of Vermont Yankee's nuclear plants. Vermont Yankee First Am. Compl. at ¶ 22.

These claims, however, are unrelated to the one-time fee.

Vermont Yankee contends that it may assert claims for the pre-closing costs because it retained claims relating to pre-1983 fuel. Vermont Yankee Mem. in Op. at 19. Vermont Yankee explains, "if the pre-1983 fuel assemblies did not exist, no additional storage racks beyond the capacity already in place as of 1989 would have been required, and similarly, the construction of an [independent spent fuel storage installation (ISFSI)] also would not have been required." *Id.* As these costs are related to pre-1983 fuel, Vermont Yankee maintains that it has retained related claims. *Id.*

However, it is insufficient that Vermont Yankee's claims merely be related to pre-1983 fuel because the PSA unambiguously provides that Vermont Yankee retained only those claims related to the one-time fee. While Vermont Yankee's pre-closing damages may stem from the pre-1983 fuel, they are unrelated to the one-time fee. Vermont Yankee was required to incur costs for storage of the Power Station's SNF prior to the sale of the Power Station and regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of Vermont Yankee's nuclear plants separate and apart from its liability to pay the one-time fee. These costs are simply unrelated to the fee. As such, Vermont Yankee did not retain claims for these costs.

### F. *Vermont Yankee Did Not Retain Its Diminution In Value Claim.*

■ Similarly, Vermont Yankee's claim for diminution in value of the Power Station must also be related to the one-time fee. In its First Amended Complaint, Vermont Yankee claims that the DOE's failure to accept the SNF under the Standard Contract diminished the value of the Power Station, such that Vermont Yankee would have received a higher price for selling the Power Station. Vermont Yankee First Am. Compl. ¶¶ 22, 26. Again, these claims are unrelated to the one-time fee.

Vermont Yankee argues that DOE's failure to dispose of the pre-1983 fuel caused diminished value damages relating to ENVY's recognition of future costs for additional spent fuel racks, design and construction of an ISF SI, risk premium, and use of all-equity financing in the transaction. Vermont Yankee Mem. in Op. at 20. Vermont Yankee thus concludes that, because its diminution-in-value claim is related to the pre-1983 fuel, Vermont Yankee has retained it in the PSA. *Id.*

The PSA, however, unambiguously provides that Vermont Yankee retained only those claims related to the one-time fee. Again, while Vermont Yankee's diminution in value claim may be related to the pre-1983 fuel, it is unrelated to the one-time fee. Vermont Yankee retained liability for the one-time fee. As such, this fee would not have impacted the value of the Power Station, as the buyer, ENVY, would not pay the fee. Thus, the diminution in value claim is unrelated to the fee and Vermont Yankee did not retain it in the PSA.

### G. *Partial Summary Judgment is Appropriate.*

In light of the foregoing, the Court holds that Vermont Yankee failed to retain its pre-closing costs and diminution-in-value claims because neither claim is related to the one-time fee. Partial summary judgment as to these claims thus is appropriate.

Plaintiff ENVY alternatively moves for an order in limine to preclude Vermont Yankee from introducing evidence regarding claims that Vermont Yankee did not retain in the PSA. ENVY Mot. for Partial Summ. J. at 1. Given that ENVY's motion for partial summary judgment has been granted, the Court need not consider this alternative motion.

### Conclusion

For the reasons explained above, Plaintiff ENVY's motion for partial summary judgment is GRANTED. Vermont Yankee's Complaint and First Amended Complaint are dismissed with prejudice.

IT IS SO ORDERED.