ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| RLB Contracting, Inc. | ) ASBCA No. 62779 |
| | ) |
| Under Contract No. W9126G-17-C-0043 | ) |

APPEARANCES FOR THE APPELLANT:  Michael H. Payne, Esq.
Casey J. McKinnon, Esq.
  Cohen Seglias Pallas Greenhall
    & Furman, P.C.
  Philadelphia, PA

APPEARANCES FOR THE GOVERNMENT:  Michael P. Goodman, Esq.
  Engineer Chief Trial Attorney
Clark Bartee, Esq.
  Engineer Trial Attorney
  U.S. Army Corps of Engineers District,
  Galveston

OPINION BY ADMINISTRATIVE JUDGE SWEET

This appeal involves dredging work that appellant RLB Contracting, Inc. (RLB) performed for the United States Army Corps of Engineers (Corps or USACE) in the Gulf Intracostal Waterway (GIWW), Texas Main Channel, San Antonio Bay, Texas. While performing that work, RLB struck the Tomcat West Pipeline (Pipeline)—a submerged natural gas pipeline—causing an explosion that damaged the dredger, and allegedly delayed completion of the contract. The Corps imposed liquidated damages. RLB submitted a claim to the contracting officer (CO) seeking a time extension and remission of the liquidated damages due to the purported excusable delays of defective specifications, differing site conditions, and a breach of the duty of good faith and fair dealing. After the CO denied that claim, RLB filed this appeal. The Corps moves for summary judgment on all of RLB's causes of action. We grant that motion and dismiss this appeal for the reasons discussed below.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

I. The Pipeline

1. The Pipeline was a natural gas pipeline owned by Genesis Energy (Genesis) that crossed the GIWW (R4, tabs 1 at 39, 10 at 277, 282-83).

2. In a November 2016 email chain (Email Chain), Corps personnel expressed concerns that the Pipeline and another pipeline were not adequately buried to -24 feet MLWW,[1] and thus at risk of an accidental strike (app. resp. ex. 1 at 814-16).

3. As a result, on November 23, 2016, the Corps forwarded its concerns to Morris P. Herbert, Inc. (Herbert)—an engineering firm (app. resp. ex. 1 at 812-13; SAGIMF ¶ 31; RSAGIMF ¶ 31).[2] Herbert forwarded the Corps' concerns to Genesis on November 23, 2016, with an email stating that the Corps was directing Genesis to lower the pipelines as soon as possible (*id.* at 812).

4. On November 29, 2016, Herbert wrote to the Corps that "[t]he pipeline will be lowered to minimum 24 feet MLLW as directed by USACE." (app. resp. ex. 1 at 809).

5. On March 23, 2017, Herbert sent the Corps an as-built drawing (Genesis As-Built Drawing) and stated that "[a]s shown on the drawing, the pipeline was lowered as directed by USACE Operations" (app. resp. ex. 6 at 917). The Genesis As-Built

---

[1] "MLLW" stands for Mean Lower Low Water and means the "average of the lower low water height of each tidal day observed over the National Tidal Datum Epoch." *See* https://tidesandcurrents.noaa.gov/datum_options.html#:~:text=MLLW*,the% 20National%20Tidal%20Datum%20Epoch.

[2] "SUMF" refers to the Corps' statement of undisputed material fact. "RSUMF" refers to RLB's response to the SUMF. "SAGIMF" refers to RLB's statement of additional genuine issues of material fact. "RSAGIMF" refers to the Corps' response to the SAGIMF.

Drawing indicated as follows:

(gov't reply ex. 2 at 919). As the Genesis As-Built Drawing's bottom drawing shows, the Pipeline was adequately buried to at least -24 feet MLWW for all of the 325-foot distance between the setbacks (*id*.).[3] That 325-foot distance was wider than the 300-foot dredging area in this appeal (R4, tab 1 at 38-39).

## II. The 0043 Contract

6. On April 7, 2017, the Corps issued Solicitation W9126G-17-B-0011, which resulted in the award of Contract No. W9126G-17-C-0043 (0043 Contract) to RLB on

---

[3] RLB's suggestion that the Genesis As-Built Drawing showed that Genesis only lowered the Pipeline across the 125-foot channel is incorrect (app. resp. at 7). The Genesis As-Built Drawing bottom drawing showed that Genesis lowered the Pipeline to at least -24 feet MLWW not just across the channel, but also between the "set back" lines (gov't reply ex. 2 at 919). Those "set back" lines are 325 feet apart based upon: (1) the horizontal graphic scale; and (2) the fact that those two "set back" lines were just to the right of STA 671 +22 and STA 674 + 53, respectively, which corresponded to the ends of the set backs that were 325 feet apart on the top drawing (125-foot channel, plus 100-foot slopes on setbacks on both sides) (*id*.).

3

June 2, 2017 (R4, tab 1 at 6-7). The 0043 Contract was for the dredging of the GIWW (*id*. at 12, 38).

7. The 0043 Contract specification 1.8 assigned the task of locating pipelines and utilities crossings the dredging area to RLB, stating that:

> It is the Contractor's responsibility to investigate the location of utility crossings. The Contractor shall take precautions against damages which can result from dredging operations in the vicinity of the utility crossings. If damage occurs as a result of dredging operations, the Contractor will be required to suspend dredging until the damage is repaired and approved. Costs of these repairs and downtime of the dredge and attendant plant shall be at the Contractor's expense.

(R4, tab 1 at 48). Similarly, the 0043 Contract incorporated by reference Federal Acquisition Regulation (FAR) 52.236-9 (PROTECTION OF EXISTING VEGETATION, STRUCTURES, EQUIPMENT, UTILITIES, AND IMPROVEMENTS) (April 1984) (*id*. at 64), which stated, *inter alia*, that "[t]he Contractor shall protect from damage all existing improvements and utilities . . . at or near the work site . . . the locations of which are made known to or should be known by the Contractor." 48 C.F.R. § 52.236-9(b).

8. The 0043 Contract specification 1.8.1 stated that:

> There are pipelines and or utilities which are within the work limits. The following pipeline/utilities cross the area(s) to be dredged:

| Approximate Station | Permit No. | Description | Owner |
|---|---|---|---|
| 1101+763 | 16247 | One 2 and 7/8-inch pipeline One 4 and 1/2-inch pipeline | General Atlantic Resources, Inc. |
| 1102+281 | 7461/ 3371 | One 12-inch pipeline | Houston Pipe Line Co. |
| 1108+419 | 16715 | One 24-inch Pipeline | Northern Natural Gas Co. |

> **EVERY EFFORT HAS BEEN MADE TO GIVE ALL PERTINENT DETAILS ON THE LOCATION OF PIPELINES/UTILITIES. THE DATA FURNISHED**

4

**ON THE PLANS ARE BELIEVED TO BE
SUBSTANTIALLY CORRECT. HOWEVER, THE
EXACT LOCATIONS MAY VARY FROM THAT
SHOWN: THEREFORE THE CONTRACTOR
SHALL COOPERATE WITH THE RESPECTIVE
OWNERS TO ESTABLISH THE ACTUAL
POSITION OF THE PIPELINES/UTILITIES. THE
U.S. ARMY CORPS OF ENGINEERS PERMITS OF
THE RESPECTIVE PIPELINES AND PREVIOUS
SURVEYS ARE AVAILABLE UPON REQUEST
FROM THE CORPUS CHRISTI RESIDENT
OFFICE.**

THE FOLLOWING IS FURNISHED FOR
INFORMAITON ON VERIFYING PIPELINE
OWNERSHIP:

Lonestar Notification Center
1-713-223-4567 or 1-800-669-8344

Texas 811 (Dig-Tess)
1/800-344-8377

(R4, tab 1 at 48-49 (emphasis in original)). Similarly, the 0043 Contract required RLB to "[v]erify with the utility owner the size, depth, coordinates, and transported material of any pipelines buried within the area of work" (*id.* at 188).

9. Although the table above did omit the Pipeline, two drawings in the 0043 Contract—drawings C-19 and C-20—showed the Pipeline crossing Section No. 17 of the dredging area (R4, tab 1 at 38-39).

10. The 043 Contract incorporated by reference FAR 52.236-21 (SPECIFICATIONS AND DRAWINGS FOR CONSTRUCTION) (Feb. 1997) (R4, tab 1 at 65), which stated, *inter alia*, that "[a]nything mentioned in the specifications and not shown on the drawings or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both" 48 C.F.R. § 52.236-21(a).

11. The 043 Contract required RLB to complete performance within 115 calendar days of the notice to proceed (R4, tab 1 at 28). The 043 Contract included a liquidated damages clause under FAR 52.211-12, which required RLB to pay $1,673 for each calendar day of delay (*id.*). However, the 043 Contract also incorporated by reference FAR 52.249-10 (DEFAULT (FIXED-PRICE CONSTRUCTION)) (April

5

1984) (*id.* at 65), which stated that RLB shall not be charged with liquidated damages if "the delay in completing the work arises from unforeseeable causes beyond the control and without the fault or negligence of the Contractor" 48 C.F.R. § 52.249-10(b)(1).

III.  Performance

12.  The Corps issued the notice to proceed on June 8, 2017 (R4, tab 3 at 248), making the contract completion date (CCD) October 1, 2017 (SUMF ¶12; RSUMF ¶ 12).

13.  RLB did not cooperate with Genesis to establish the actual position of the Pipeline prior to dredging, or request the Pipeline permit or surveys from the Corps (Hernandez Decl. ¶¶ 9-10; gov't mot. at ex. 1; SUMF ¶ 18; RSUMF ¶ 18).

14.  On April 17, 2018, the *Jonathon King Boyd*—one of RLB's dredgers—struck the Pipeline while performing dredging in Section No. 17, causing a gas plume to ignite and damage the *Jonathon King Boyd* (R4, tabs 4 at 251; 10 at 277).

15.  During a telephone call on April 18, 2018, Randy Boyd of RLB informed Christopher Frabotta—Chief of the Corps' Navigation Branch—"you know Chris, the pipeline was clearly marked on the plans and this one's on us.  It's on my guys; well it's on me.  My guys should have performed better coordination" (R4, tab 4 at 251).[4]

16.  RLB claims that, due to the damage, it was unable to perform dredging work between April 17, 2018 and December 21, 2018 (R4, tab 11 at 289).  RLB completed the dredging work on April 17, 2019 (R4, tab 14 at 313).[5]

_____

[4] While RLB calls the above statement self-serving, it is not hearsay because it was an opposing party's statement.  FED. R. EVID. 801(d)(2).  Moreover, RLB did not raise a genuine issue of material fact regarding that statement by submitting contradictory evidence, such as a declaration from Mr. Boyd (app. resp. at 2-3).

[5] The Corps points to a July 16, 2019 National Transportation Safety Board (NTSB) report's probable cause findings regarding the accident (R4, tab 10).  However, "[n]o part of a report of the [National Transportation Safety] Board relating to an accident or an investigation of an accident may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report."  49 U.S.C. § 1154(b); *see also In re Air Crash Disaster at Sioux City, Iowa*, 780 F.Supp. 1207, 1208-11 (N.D. Ill. 1991).  Because we find in favor of the Corps anyway, we assume without deciding that that statute precludes our consideration of the NTSB report's findings regarding probable cause.

IV. Procedural History

17. On July 2, 2020, RLB submitted a certified claim to the CO (R4, tab 11 at 288-301).

18. On October 30, 2020, the CO issued a final decision, denying the claim (R4, tab 14 at 308-19).

19. This appeal followed. The complaint alleges that RLB is entitled to a time extension of 363 days and remission of liquidated damages in the amount of $585,550 due to the excusable delays of the Corps providing defective specifications, RLB encountering differing site conditions, and the Corps breaching its duty of good faith and fair dealing (compl. ¶¶ 33-52, WHEREFORE clause).

DECISION

The Corps properly imposed liquidated damages under the 0043 Contract because there is no genuine issue of material fact suggesting that there was excusable delay. Where—as here (SOF ¶ 11)—a contract authorizes the imposition of liquidated damages, the government may impose reasonable liquidated damages for delays, unless a contractor can show that the delays were excusable. *Ken Laster Co.*, ASBCA No. 61292, 20-1 BCA ¶ 37,659 at 182,855. The government bears the initial burden of proving that the contractor failed to meet the CCD, and that the period of time for which the government assessed liquidated damages was correct. *Id.* If the government makes such a showing, then the burden shifts to the contractor to show that its failure to timely complete the work was excusable. *Id.*

Here, RLB does not dispute the Corps' showing that RLB failed to meet the CCD, and that the period of time for which the Corps assessed liquidated damages was correct (*see generally* app. resp. 9-18). Rather, RLB argues that that delay was excusable because the Corps provided defective specifications, there were differing site conditions, and the Corps breached its duty of good faith and fair dealing (*id.*). As discussed below, RLB has failed to raise a genuine issue of material fact suggesting that there were defective specifications, differing site conditions, or a breach of the duty of good faith and fair dealing.

I. Summary Judgment Standard

We grant summary judgment only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (internal citations omitted). All significant doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). In

7

deciding summary judgment motions, we do not resolve controversies, weigh evidence, or make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, we draw all reasonable inferences in favor of the non-movant. *Id.* A genuine issue of material fact arises when the non-movant presents sufficient evidence upon which a reasonable fact-finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the non-movant. *C Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993).

## II. Defective Specifications Claim

RLB has failed to raise a genuine issue of material fact suggesting that the Corps provided defective specifications. As we have recognized:

> When the government provides a contractor with defective specifications, the government is deemed to have breached the implied warranty that satisfactory contract performance will result from adherence to the specifications, and the contractor is entitled to recover all of the costs proximately flowing from the breach.

*Essex Electro Engineers, Inc. v. Danzig*, 224 F.3d 1283, 1289 (Fed. Cir. 2000). A contractor may not prevail on a defective specifications claim when it has assumed the risk of performance, such as when the government uses specific—as opposed to general—exculpatory language. *Commercial Constr. Corp.*, ASBCA No. 24087, 80-1 BCA ¶ 14,312 at 70,532. In order to establish a defective specifications claim, the contractor bears the burden of establishing the fundamental facts of liability, causation, and resulting injury. *Wunderlich Contracting Co. v. United States*, 351 F.2d 956, 968 (Ct. Cl. 1965). As discussed below, RLB has failed to raise a genuine issue of material fact regarding either liability or causation.

## A. Liability

RLB has not presented sufficient evidence upon which a reasonable fact-finder could decide the issue of liability in its favor. RLB first argues that specification 1.8.1 was defective because it omitted the Pipeline from the identified known pipelines and utility crossings the dredging areas (app. resp. at 11; *see also* SOF ¶ 8). However, we must read a contract as a whole. *Medlin Constr. Group, Ltd. V. Harvey*, 449 F.3d 1195, 1200 (Fed. Cir. 2006); *A.R. Mack Constr. Co.*, ASBCA No. 49526, 97-1 BCA ¶ 28,742 at 143,464. In particular, even if a specification omits a condition, the contract nevertheless accurately discloses the condition if the contract contains a FAR 52.236-21 clause and drawings that accurately disclose the condition. *Hobbs Constr. & Develop., Inc.*, ASBCA No. 299910, 91-1 BCA ¶ 23,518 at 117,933;

8

FAR 52.236-21.  Here, the 0043 Contract contained a FAR 52.236-21 clause, which stated that "[a]nything . . . shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both" (SOF ¶ 10). Moreover, drawings C-19 and C-20 accurately disclosed that the Pipeline crossed the dredging area (SOF ¶ 9).  Therefore, read as a whole, the 0043 Contract accurately disclosed that the Pipeline crossed the dredging area, despite specification 1.8.1's omission of the Pipeline from the list of pipelines and utilities crossing the dredging area.

RLB next points to specification 1.8.1's statement that "every effort has been made to give all pertinent details on the location of pipelines/utilities.  The data furnished on the plans are believed to be substantially correct[.]"  RLB argues that that statement was defective because the Email Chain and the Genesis As-Built Drawing show that the Corps knew that the Pipeline was not adequately buried to -24 feet MLLW over the 300 feet dredging area, and failed to disclose that information to RLB.  (App. resp. at 11-12 (quoting SOF ¶ 8) (emphasis omitted))  However, the Email Chain at most raises a genuine issue of material fact suggesting that the Corps knew in November 2016 that the Pipeline was not adequately buried (SOF ¶ 2).  It is not reasonable to infer from that fact that the Corps knew when it issued the solicitation and awarded the 0043 Contract on April 7, 2017 and June 2, 2017, respectively, that the Pipeline was not adequately buried because there is no genuine issue of material fact but that:  (1) in the Email Chain, the Corps—through Herbert—directed Genesis to lower the Pipeline as soon as possible in November 2016 (SOF ¶ 3); (2) Herbert confirmed to the Corps on March 23, 2017 that "the pipeline was lowered as directed by USACE Operations" (SOF ¶ 5); and (3) Herbert provided the Corps on March 23, 2017, the Genesis As-Built Drawing, showing that Genesis adequately buried the Pipeline to at least -24 feet MLWW for all of the 325 feet of the GIWW channel, slopes, and setbacks—which was wider than the 300 feet dredging area (SOF ¶ 5).  Thus, RLB has failed to raise a genuine issue of material fact suggesting that the Corps knew when it issued the solicitation and awarded the 0043 Contract that the Pipeline was inadequately buried.

In any event, RLB's defective specifications claim would fail because there is no genuine issue of material fact but that RLB assumed the risk of determining the Pipeline's location and depth, and specification 1.8.1 used specifically exculpatory language regarding any representations as to the Pipeline's location and depth.  RLB assumed the risk of determining the Pipeline's location and depth through specification 1.8.1, which stated that "the contractor shall cooperate with the respective owners to establish the actual position of the pipelines/utilities" (SOF ¶ 8 (emphasis omitted)).  Similarly, specification 1.8 stated that:

> It is the Contractor's responsibility to investigate the
> location of utility crossings.  The Contractor shall take

9

> precautions against damages which can result from
> dredging operations in the vicinity of the utility crossings.
> If damage occurs as a result of the dredging operations, the
> Contractor will be required to suspend dredging until the
> damage is repaired and approved. Costs of these repairs
> and downtime of the dredge and attendant plant shall be at
> the Contractor's expense.

(SOF ¶ 7). Likewise, the 0043 Contract required RLB to "[v]erify with the utility owner the size, depth, coordinates, and transported material of any pipelines buried within the area of work," and provided that "[t]he Contractor shall protect from damage all existing . . . utilities . . . at or near the work site." (SOF ¶¶ 7-8). Further, specification 1.8.1 used specific exculpatory language, stating that "the exact locations [of pipelines and utilities] may vary from that shown." (SOF ¶ 8 (emphasis omitted)). Because there is no genuine issue of material fact but that RLB assumed the risk of determining the Pipeline's location and depth, and specification 1.8.1 used specifically exculpatory language, RLB's defective specifications claim must fail. *Commercial Constr.*, 80-1 BCA ¶ 14,312 at 70,532.[6]

## B. Causation

Nor has RLB presented sufficient evidence upon which a reasonable fact-finder could decide that any defective specifications caused the injury. First, RLB does not even argue—let alone presents sufficient evidence upon which a reasonable fact-finder could decide—that any inadequate burial of the Pipeline caused the accident (app. br. 9-10).

On the contrary, there is no genuine issue of material fact but that RLB's failure to satisfy its duty to determine the Pipeline's location and depth caused the accident. As discussed above, the 043 Contract required RLB to determine the Pipeline's location and depth (SOF ¶¶ 7-8). However, RLB failed to determine the Pipeline's location and depth (SOF ¶ 13).

There is no genuine issue of material fact but that it was that failure by RLB to determine the Pipeline's location and depth that cause the injury. As Mr. Boyd of RLB acknowledged after the accident that "the pipeline was clearly marked on the

---

[6] We do not enforce specific exculpatory language if the parties did not contemplate enforcement, or enforcement would be inconsistent with some other significant contract provision. *Commercial Constr.*, 80-1 BCA ¶ 14,312 at 70,532. RLB does not argue that the parties did not contemplate enforcement of the specific exculpatory language, or that such enforcement would be inconsistent with some other significant contract provision (*see generally* app. resp.).

10

plans and this one's on us. It's on my guys; well it's on me. My guys should have performed better coordination" (SOF ¶ 15). Therefore, there is no genuine issue of material fact but that RLB's failure to fulfill its contractual duty to determine the Pipeline's location and depth—and not any defective specifications—caused the injury. As a result, the Corps is entitled to judgment as a matter of law on RLB's defective specifications claim.

   III.  Differing Site Conditions Claim

       There is no genuine issue of material fact suggesting that there were differing site conditions. The elements of a type I[7] differing site conditions claim are that: (1) the contract contained a positive indication of the conditions at the site; (2) the contractor reasonably interpreted and relied upon the indicated site conditions; (3) the conditions encountered were materially different from those indicated; (4) the conditions encountered were reasonably unforeseeable based upon the information available to the contractor at the time of bidding; and (5) the differing site conditions were the sole cause of the contractor's injury. *Nova Group, Inc.*, ASBCA No. 55408, 10-2 BCA ¶ 34,533 at 170,321 (citing *H.B. Mac, Inc. v. United States*, 153 F.3d 1338, 1345 (Fed. Cir. 1998); *Stuyvesant Dredging Co. v. United States*, 834 F.2d 1576, 1581 (Fed. Cir. 1987)).

       Here, RLB has failed to present sufficient evidence upon which a reasonable fact-finder could decide that there was a positive indication in the 0043 Contract as to the Pipeline's depth (app. resp. at 10-16). Rather, RLB complains that the 0043 Contract failed to disclose that the Pipeline was inadequately buried (*id.* at 16). However, because establishing a differing site conditions claim requires a positive indication, the absence of an indication in the 0043 Contract regarding the Pipeline's depth does not support a differing site conditions claim. *See David Boland, Inc.*, ASBCA No. 61923 *et al.*, 21-1 BCA ¶ 37,822 at 183,656 (holding that the absence of an indication in a contract regarding the state of a utility line did not support a differing site conditions claim).

       Moreover, RLB has failed to present sufficient evidence upon which a reasonable fact-finder could decide that the conditions encountered were reasonably unforeseeable based upon the information available to RLB at the time of bidding. If—as RLB alleges—the Genesis As-Built Drawing showed that the Pipeline was inadequately buried (which is not the case) (app. resp. at 7, 11-12, 16), then the purported fact that the Genesis As-Built drawing showed the Pipeline was

---

[7] Given RLB's allegation that actual conditions differed materially from those indicated in the 0043 Contract, (compl. ¶ 49), it is clear that RLB is bringing a type I—and not a type II—differing site conditions claim. *See Dennis T. Hardy Elec., Inc.*, ASBCA No. 47770, 97-1 BCA ¶ 28,840 at 143,870.

11

inadequately buried would have been reasonably foreseeable based upon the information available to RLB because the Genesis As-Built Drawing was available to RLB. As specification 1.8 stated, "the U.S. Army Corps of Engineers permits of the respective pipelines and previous surveys are available upon request from the Corpus Christi Resident Office." (SOF ¶ 8 (emphasis omitted)) Further, as discussed above, RLB could have—and indeed was contractually required to—determine the Pipeline's depth by contacting Genesis (SOF ¶¶ 7-8). Thus, there is no genuine issue of material fact suggesting that the conditions encountered were reasonably unforeseeable based upon the information available to RLB at the time of bidding. *See Control, Inc. v. United States*, 294 F.3d 1357, 1365 (Fed. Cir. 2002) (holding that a differing site conditions claim related to a pipeline failed when a reasonably prudent contractor would have inquired about the pipeline's location).

Finally, there is no genuine issue of material fact suggesting that that failure to disclose the Pipeline's depth was the sole cause of RLB's injury. Rather, as discussed above, there is no genuine issue of material fact but that RLB's failure to fulfill its contractual duty to determine the Pipeline's depth caused the injury (SOF ¶¶ 7-8, 13). As a result, the Corps is entitled to judgment as a matter of law on RLB's differing site conditions claim.

IV. The Duty of Good Faith and Fair Dealing Claim

There is no genuine issue of material fact suggesting that the Corps breached its duty of good faith and fair dealing. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Metcalf v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014) (internal citation omitted). However, a party cannot use an implied duty of good faith and fair dealing to expand another party's contractual duties beyond those in the contract, or to create duties inconsistent with the contract's provisions. *Agility Pub. Warehousing Co. KSCP v. Mattis*, 852 F.3d 1370, 1384 (Fed. Cir. 2017) (internal citation omitted).

Here, RLB argues that the Corps breached its duty of good faith and fair dealing by failing to disclose its knowledge that the Pipeline was inadequately buried, despite the Corps' representation that it would "give all pertinent details on the location of pipelines" and utilities and that the "data furnished on the plans are believed to be substantially correct" (app. resp. at 14-15; *see also* SOF ¶ 8). However, as discussed above, there is no genuine issue of material fact suggesting that the Corps knew that the Pipeline was inadequately buried at the time of the solicitation and contract award (SOF ¶ 5). In any event, RLB cannot use the duty of good faith and fair dealing to impose upon the Corps a duty to disclose the Pipeline's depth because that would create a duty inconsistent with the 0043 Contract, which—as discussed above—imposed upon RLB a duty to determine the Pipeline's depth (SOF ¶¶ 7-8).

12

Therefore, the Corps is entitled to judgment as a matter of law on RLB's breach of the duty of good faith and fair dealing claim.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted and we dismiss this appeal.

Dated:  June 15, 2023

JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62779, Appeal of RLB Contracting, Inc., rendered in conformance with the Board's Charter.

Dated:  June 16, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

13