NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BCC-UIPROJECTS-ZAAZTC TEAM JV,**
*Appellant*

**v.**

**SECRETARY OF THE ARMY,**
*Appellee*

---

2022-2143

---

Appeal from the Armed Services Board of Contract Appeals in No. 62846, Administrative Judge J. Reid Prouty, Administrative Judge Michael N. O'Connell, Administrative Judge Richard Shackleford.

---

Decided: March 27, 2024

---

PATRICK BERNARD KERNAN, Kernan and Associates Law Group, PLLC, Washington, DC, argued for appellant.

DANIEL B. VOLK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by BRIAN M. BOYNTON, WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY.

---

Before PROST, TARANTO, and HUGHES, *Circuit Judges*.

PROST, *Circuit Judge*.

BCC-UIProjects-ZAAZTC Team JV ("B-U-Z")[1] appeals an Armed Services Board of Contract Appeals ("Board") decision dismissing B-U-Z's Board appeal. For the reasons below, we affirm.

## BACKGROUND

B-U-Z was formed for the purpose of bidding on a government construction contract. The B-U-Z joint-venture agreement provided that:

> Both parties agreed to introduce and authorize **Mr. Ahmad Tariq Barakzai** to sign the contract on behalf of the joint venture and [he] is authorized to sign solicitations, applicable amendments, and bind the entire joint venture to its obligation under any contract which may result from the solicitation.

J.A. 193 (emphasis in original). The agreement was signed by Dr. Zahed[2] as VP of ZAAZTC and Mr. Barakzai as president of BCC. J.A. 194. In 2011, the government awarded B-U-Z the solicited contract and, as contemplated by the joint-venture agreement, the contract between the government and B-U-Z was signed by Mr. Barakzai. J.A. 107

---

[1]    Behnam Construction Company ("BCC"); United Infrastructure Projects ("UIP"); Zamarai Ali Ahmad Zada General Trading and Construction Company ("ZAAZTC").

[2]    We have adopted the Board's convention of referring to "Dr. Zahed" with the same spelling throughout, while likewise noting that there are some spelling variations across the documents. *See* J.A. 3 n.4; *see also* J.A. 194 ("Dr. Wahid Zahedi"); J.A. 202 ("Dr. Wahidullah Zhed"); J.A. 2448 ("Dr. Wahidullah Zahed").

(Name and Title of Contractor or Person Authorized: Ahmad Tariq Barakzai/Team President).

On July 17, 2014, the contracting officer received a "request for equitable adjustment (REA)" that generally sought compensation for "delay days" and "differing site condition[s]." J.A. 2444. The REA was signed "Dr. Wahidullah Zahed . . . Vice President . . . BCC-ZAAZTC." J.A. 2448.

On March 23, 2015, Mr. Barakzai sent a letter to the contracting officer that stated, "only Mr. Ahmad Tariq Barakzai has the legal rights to enter into contractual negotiations and/or claims with [United States Army Corps of Engineers] USACE and claims submitted to USACE by BCC-ZAAZTC JV-UIP Team officials and not signed by Mr. Ahmad Tariq shall be immediately dismiss[]ed by USACE." J.A. 189. It further stated that any other individual submitting claims related to the contract "has no legal authority to do so." *Id.*

Subsequently, another correspondence titled "[r]equest for [e]quitable [a]djustment" and dated May 27, 2015, was sent to the contracting officer. J.A. 199–202. Like the July 2014 REA—which Mr. Barakzai indicated was unauthorized and should be dismissed—this request was also signed "Dr. Wahidullah Z[a]hed . . . Vice President . . . BCC-ZAAZTC." J.A. 202.

USACE sent Mr. Barakzai two emails inquiring about whether anything had changed since his March 23, 2015 letter. J.A. 2517–18. The emails explained that the contracting officer had received a May 2015 request signed by Dr. Zahed. *Id.* Based on Mr. Barakzai's earlier letter, USACE reiterated its understanding that "USACE is to not accept such [an] REA or claim." J.A. 2518. However, the emails generally provided Mr. Barakzai with an opportunity to indicate that the May 2015 request was authorized or to authorize it. J.A. 2518. Mr. Barakzai responded by stating that "[t]he REA has been submitted to USACE

by unauthorized parties without Mr. Ahmad Tariq Barakzai's consent." J.A. 2517.

In 2021, B-U-Z appealed from what it termed "the contracting officer's deemed denial" of its 2015 claim.[3] J.A. 104. The Board dismissed B-U-Z's appeal on several alternative grounds. Relevant for our disposition, the Board concluded that (1) B-U-Z had not submitted a claim because neither REA was submitted by someone with authority to bind the joint venture and (2) even assuming that Dr. Zahed had authority to submit claims on behalf of B-U-Z, Mr. Barakzai, who was undisputedly authorized to bind the joint venture, had withdrawn those claims. *See* J.A. 11–15.

B-U-Z timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(10).

## DISCUSSION

We review the Board's decisions on questions of law de novo. 41 U.S.C. § 7107(b)(1). The Board's jurisdiction under the Contract Disputes Act ("CDA") presents a question of law. *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc). The interpretation of a government contract is also a question of law. *Triple Canopy, Inc. v. Sec'y of Air Force*, 14 F.4th 1332, 1338 (Fed. Cir. 2021).

"As a prerequisite for the Board's jurisdiction, the CDA requires a contractor to present a valid claim over which the contracting officer has rendered a final decision." *Parsons Glob. Servs., Inc. ex rel. Odell Int'l, Inc. v. McHugh*, 677 F.3d 1166, 1170 (Fed. Cir. 2012). The CDA itself

---

[3]   Since we conclude that any submitted claim was unauthorized and withdrawn, communications from the contracting officer that might be considered as part of a denial or timing-of-denial analysis are unimportant for our purposes, so they have not been discussed.

contemplates that claims are "by a contractor." 41 U.S.C. § 7103(a)(1), (a)(2). Section 7101(7) defines "contractor," as used in chapter 71, as "a party to a Federal Government contract other than the Federal Government."

Here, the Board concluded that because the contracting officer was never presented with a request for decision *by a contractor*, there was no claim under the CDA. We agree that the requests Dr. Zahed submitted to the contracting officer were not requests *by* B-U-Z.[4] As a result, we do not reach the parties arguments about whether the REAs were requests for final decisions or whether the Board properly dismissed the claims as untimely.

There is no dispute that the only contractor here was B-U-Z. The only question is whether REAs submitted by Dr. Zahed were requests *by* B-U-Z. We agree with the Board that Dr. Zahed was not authorized by the joint-venture agreement to submit claims on behalf of B-U-Z. Thus, his submissions to the contracting officer were not B-U-Z's claims or requests.

B-U-Z argues that the Board incorrectly concluded that Dr. Zahed did not have authority to submit claims under the joint-venture agreement. Further, B-U-Z argues that the claims were authorized because BCC and ZAAZTC sent

---

[4] In general, B-U-Z's briefing appears to acknowledge that there is a distinction between the issue of whether a claim was submitted by a contractor and the issue of whether a claim contains a compliant CDA certification. Nonetheless, B-U-Z argues that, "to the extent that the Board found" a certification defect, "this defect can be cured and does not divest the Board of jurisdiction." Appellant's Br. 17. We agree with the Board that its determination that a claim was not submitted by the contractor is distinct from a determination that the claim's certification contained a technical defect. J.A. 11 n.16.

their settlement agreement to the contracting officer. These arguments are unpersuasive.

First, we agree with the Board that the best reading of the joint-venture agreement is that it granted Mr. Barakzai sole authority to bind the joint venture, which included sole authority to bring claims on behalf of the joint venture.

The Board correctly determined that the contract provision broadly authorizing Mr. Barakzai to sign the contract, solicitations, and applicable amendments as well as to "bind the entire joint venture to its obligation under any contract which may result from the solicitation" encompassed an authorization to submit claims, even though claim submission was not explicitly enumerated. J.A. 12–13 (quoting J.A. 193).

Next, we agree with the Board that this grant of authority to Mr. Barakzai was to the exclusion of others. J.A. 13. B-U-Z argues that Dr. Zahed had authority because, as a default matter, each member of a joint venture can act on the joint venture's behalf. However, this default rule serves to reinforce the conclusion that the contract language at issue granted Mr. Barakzai exclusive authority. Under B-U-Z's reading, the clause would simply indicate authority Mr. Barakzai already had by virtue of his role as BCC's president—authority that unlisted others would share—without having any other effect. This would render the clause superfluous. "A reasonable interpretation must 'assure that no contract provision is made inconsistent, superfluous, or redundant.'" *Medlin Constr. Grp., Ltd. v. Harvey*, 449 F.3d 1195, 1200 (Fed. Cir. 2006) (quoting *Lockheed Martin IR Imaging Sys., Inc. v. West*, 108 F.3d 319, 322 (Fed. Cir. 1997)). Here, the most reasonable interpretation of the authority provision is that it gave Mr. Barakzai sole authority.

Regardless, even if B-U-Z were correct that the contract's grant of authority is non-exclusive, the result would

be the same. Mr. Barakzai was authorized to bind the joint venture and B-U-Z does not contend that Mr. Barakzai was not authorized to request dismissal or withdraw claims. Mr. Barakzai expressly indicated that both requests from Dr. Zahed were unauthorized and instructed the contracting officer to dismiss any requests Mr. Barakzai did not submit himself. *See* J.A. 189; J.A. 2517. We agree with the Board that irrespective of Dr. Zahed's authority in the first instance, Mr. Barakzai's authorized communications "effectively withdr[ew] both REAs." J.A. 14.

Finally, the mere submission of BCC's and ZAAZTC's settlement agreement to the contracting officer did not serve to retroactively authorize or resubmit the withdrawn claims by an authorized party. As B-U-Z recognizes, the settlement agreement between the parties did not mention authority. *See* Appellant's Br. 15. This agreement did not purport to alter the authority clause or submit a new claim. Instead, the settlement agreement indicated that the parties resolved an internal dispute about how proceeds, if any, from a claim "[ZAAZTC] covenant[ed] and agree[d] that *it* has submitted" would be divided. J.A. 275 (emphasis added). Further, both entities agreed to dissolve the joint venture. J.A. 275. The Board correctly concluded that the submission of this agreement did not change the nature of the earlier claims, which were unauthorized and withdrawn.

## CONCLUSION

We have considered B-U-Z's remaining arguments and find them unpersuasive. For the reasons provided, we affirm the Board's dismissal of B-U-Z's appeal for lack of jurisdiction.

## **AFFIRMED**